## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, TENNESSEE CONSOLIDATED RETIREMENT SYSTEM, SJUNDE AP-FONDEN, FJÄRDE AP-FONDEN, and PENSIONSKASSERNES ADMINISTRATION A/S, Individually and On Behalf of All Others Similarly Situated, | No. |
| Plaintiffs, | |
| v. | |
| CITIGROUP INC., CHARLES O. PRINCE, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN, TODD S. THOMSON, ROBERT DRUSKIN, THOMAS G. MAHERAS, MICHAEL STUART KLEIN, DAVID C. BUSHNELL, JOHN C. GERSPACH, STEPHEN R. VOLK, GEORGE DAVID and KPMG LLP, | |
| Defendants. | |
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff, | No. 1:07-cv-9901(SHS) |
| vs. | |
| CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN, | ECF CASE |
| Defendants. | |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated, | Electronically Filed |
| Plaintiff | No. 1:07-cv-10258(SHS) |
| v. | |
| CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN, | ECF CASE |
| Defendants. | |

**THE GLOBAL PENSION FUNDS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN ORDER PARTIALLY LIFTING THE PRIVATE SECURITIES LITIGATION REFORM ACT DISCOVERY STAY**

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.
SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706


Attorneys for Plaintiffs Public Employees'
Retirement Association of Colorado, Tennessee
Consolidated Retirement System, Sjunde AP-
Fonden, Fjärde AP-Fonden, and Pensionskassernes
Administration A/S

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 5

ARGUMENT ......................................................................................................... 6

I.    THE PSLRA PROVIDES THE COURT WITH DISCRETION TO LIFT
      THE DISCOVERY STAY IN CASES WHERE THE DOCUMENTS
      REQUESTED HAVE ALREADY BEEN PRODUCED TO
      REGULATORY AUTHORITIES PURSUANT TO ONGOING
      INVESTIGATIONS ...................................................................................... 6

      A.    The Global Pension Funds Bring A Meritorious Securities Fraud
            Case Against The Defendants And Are Therefore Not Abusing
            Discovery ......................................................................................... 9

      B.    Defendants Are Not Unduly Burdened By Producing Documents
            That Have Already Been Produced To Regulatory Authorities ............... 11

II.   THE GLOBAL PENSION FUNDS' REQUEST FALLS UNDER THE
      PSLRA EXCEPTIONS TO THE DISCOVERY STAY ...................................... 13

      A.    The Global Pension Funds' Request For Discovery Is Sufficiently
            Particularized ................................................................................... 13

      B.    The Global Pension Funds And The Class Will Suffer Undue
            Prejudice If The Stay Is Not Lifted ......................................................... 14

      C.    The Global Pension Funds' Request Is Also Necessary To Preserve
            Evidence ............................................................................................ 18

CONCLUSION ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. First Sec. Corp.*,
    157 F. Supp. 2d 1230 (D. Utah 2001)...................................................................................... 15

*In re Bayer AG Sec. Litig.*,
    No. 03 Civ. 1546 (WHD), 2004 U.S. Dist. Lexis 19593 (S.D.N.Y. Sept. 30, 2004) .............. 11

*In re Grand Casinos, Inc. Sec. Litig.*,
    988 F. Supp. 1270 (D. Minn. 1997)........................................................................................ 7

*Global Intellicom, Inc. v. Thomson Kernaghan & Co.*,
    No. 99 CIV. 342(DLC), 1999 U.S. Dist. LEXIS 5439 (S.D.N.Y. Apr. 15, 1999) .................. 15

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) ................................................................................................ 17

*In re LaBranche Sec. Litig.*,
    333 F. Supp. 2d 178 (S.D.N.Y. 2004) ................................................................................... 7

*In re Lernout & Hauspie Sec. Litig.*,
    214 F. Supp. 2d 100 (D. Mass. 2002)...................................................................... 6, 8, 13, 15

*Mishkin v. Ageloff*,
    220 B.R. 784 (S.D.N.Y. 1998)............................................................................................. 13

*Newby v. Enron Corp.*,
    No. H-01-3624 (S.D. Tex. Aug. 15, 2002) .................................................................... *passim*

*Newby v. Enron Corp.*,
    No. H-01-3624 (S.D. Tex. Feb. 27, 2002) .............................................................................. 7

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    220 F.R.D. 246 (D. Md. 2004)............................................................................................... 7

*Tobias Holdings, Inc. v. Bank United Corp.*,
    177 F. Supp. 2d 162 (S.D.N.Y. 2001) ............................................................................... 7, 8

*In re Tyco, Int'l Ltd. Multidistrict Litig.*,
    MDL No. 02-1335-B (D.N.H. Jan. 29, 2003)...................................................... 12, 14, 16, 18

*Vacold LLC and Immunotherapy, Inc. v. Cerami*,
    No. 00 Civ. 4024 (AGS), 2001 U.S. Dist. LEXIS 1589 (S.D.N.Y. Feb. 16, 2001) ............ 8, 15

*In re WorldCom, Inc. Sec. Litig.*,
    234 F. Supp. 2d 301 (S.D.N.Y. 2002) ......................................................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B)................................................................................... 1, 7, 13, 18

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at 31, *reprinted in* 1995 U.S.S.C.A.N. 730....................................... 6

**Rules**

Fed. R. Civ. P. 26(a)(1)................................................................................................. 12

Fed. R. Civ. P. 26(a)(1)(A)(ii) ..................................................................................... 13

Plaintiffs Public Employees' Retirement Association of Colorado, Tennessee

Consolidated Retirement System, Sjunde AP-Fonden, Fjärde AP-Fonden, and Pensionskassernes

Administration A/S (collectively, the "Global Pension Funds"), on behalf of themselves and the

Class defined herein, respectfully submit this Memorandum of Law in Support of the Global

Pension Funds' Motion For an Order Partially Lifting the Discovery Stay imposed under Section

21D(b)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) (the "PSLRA"),

concerning the facts and circumstances that gave rise to the above-captioned actions and any

related actions that may be filed (the "Actions"), during the period of January 2, 2004 to

November 21, 2007 (the "Class Period").

## PRELIMINARY STATEMENT

The Global Pension Funds respectfully ask this Court to enter an order partially lifting the

PSLRA discovery stay (15 U.S.C. § 78u-4(b)(3)(B)) so that the Global Pension Funds may

conduct limited discovery and obtain the following documents and electronically stored

information ("ESI"):  all documents and ESI that Citigroup Inc. (together with its predecessors,

subsidiaries, affiliates, and related entities "Citigroup" or the "Company") and all other

defendants (collectively, the "Defendants") in this action have produced, or will be producing, to

the United States Securities and Exchange Commission ("SEC"), any United States Attorney,

any State's Attorney General, the Financial Industry Regulatory Authority, Inc., and any other

regulatory, governmental, or investigative agency, or other private parties involved in reviewing

the facts and circumstances giving rise to this action.  By entering such an order, the Global

Pension Funds will be able to:  (1) prosecute this action expeditiously; and (2) avoid the undue

prejudice that the Global Pension Funds and the Class will suffer if they do not obtain the requested limited discovery at the earliest possible opportunity.

The PSLRA discovery stay is far from absolute. Both the language of the PSLRA and the decisions of numerous federal courts that have since interpreted the PSLRA recognize that district courts have the discretion to lift the PSLRA discovery stay when:

- the litigation at issue is clearly meritorious, and the request for discovery is not an attempt to force innocent defendants into a settlement of frivolous claims;

- the request for discovery is sufficiently particularized;

- either the requested lifting of the discovery stay is necessary to preserve evidence or the party seeking limited discovery will suffer undue prejudice if the PSLRA discovery stay is not lifted for the requested purpose; and

- the limited discovery requested will not unduly burden the party from which such discovery is sought.

The facts and circumstances presented in this securities fraud litigation satisfy each of the foregoing prerequisites necessary for this Court to order a partial lifting of the PSLRA discovery stay to permit the Global Pension Funds to obtain the particularized discovery sought by this motion.

### The Claims Of The Global Pension Funds And The Class Are Meritorious

As explained more fully in Section I(A) below, the claims presented against Citigroup and the defendants in these Actions are meritorious. The combination of several key facts, including: (1) Citigroup's lack of transparency concerning its exposure to losses based upon the Company's creation and/or sponsorship of numerous off-balance sheet Variable Interest Entities ("VIEs") relating to the sale of mortgage-backed securities; and (2) Citigroup's use of undisclosed "Liquidity Puts" and other credit enhancement devices in connection with the "sales" of its collateralized debt obligations ("CDOs") establishes that this action is meritorious.

Toward the end of the Class Period, Citigroup revealed that its previously undisclosed Liquidity Puts resulted in a return of approximately $25 billion of worthless CDO paper to the Company. Ironically, Citigroup issued these Liquidity Puts throughout the Class Period despite knowing as of 2004 that subprime-based securities and asset-backed securities were unduly risky areas. Citigroup never adequately discussed any of its risky investments and/or guarantees in this area. Moreover, during the Class Period, numerous governmental and regulatory bodies have conducted in-depth investigations of Citigroup for such business practices, and the severe drop of the Company's stock following these shocking revelations also establishes that this securities fraud case is not frivolous.

**The Discovery That The Global Pension Funds Seek Is Sufficiently Particularized**

The discovery sought pursuant to this motion is sufficiently particularized. The Global Pension Funds only seek copies of documents and other materials that the Defendants in the Actions have collected, reviewed, and produced, or will be producing, to the SEC, any United States Attorney, any State's Attorney General, the Financial Industry Regulatory Authority, Inc., and any other regulatory, governmental, or investigative agency, or other private parties involved in reviewing the conduct that gave rise to these Actions. As demonstrated below in Section II(A), there is ample precedent indicating that the limited universe of documents and materials that the Global Pension Funds now seek is sufficiently particularized to satisfy the standards for a partial lifting of the PSLRA discovery stay.

**The Global Pension Funds Will Suffer Undue Prejudice**
**If The Discovery Stay Is Not Lifted**

The Global Pension Funds will suffer undue prejudice without the partial lifting of the discovery stay sought pursuant to this motion. As the Court is aware, and as further detailed in the Factual Background section, there are numerous investigations proceeding in the United

States by a variety of different governmental and regulatory authorities.  The authorities conducting these investigations have already received the limited discovery sought by this motion, and none of them face any comparable impediment to developing their investigation. Moreover, the plaintiffs in the parallel shareholder derivative and ERISA actions will soon be permitted to engage in broad discovery, and will also soon possess much more information than the limited discovery sought herein.  In fact, only the Global Pension Funds and the Class of injured investors will be hampered and delayed in pursuing their claims.  In such a situation, courts have recognized that a plaintiff class will suffer undue prejudice if it is forced to "ride out" the PSLRA discovery stay before developing its case.  It is for this very reason that Congress specifically provided for a partial lifting of the PSLRA discovery stay to prevent classes of investors from suffering the type of undue prejudice that the Global Pension Funds and the Class will face if the stay is not lifted as requested herein.  Moreover, the required material would also necessarily be part of the defendants' Rule 26 disclosures in the parallel shareholder derivative and ERISA actions.

### Lifting The Stay Does Not Unduly Burden The Defendants

Lastly, the defendants cannot credibly claim that the Global Pension Funds' limited request for discovery will impose an unreasonable burden upon them.  The documents and materials that the Global Pension Funds seek have already been produced or will be produced to the authorities that are conducting investigations pertaining to the precise misconduct at issue in this litigation.  As the defendants have, or will have, already gathered, reviewed, and produced these documents, any conceivable burden upon these defendants is minimal in comparison to the undue prejudice that the Global Pension Funds and the Class will suffer in absence of this limited production.

The Global Pension Funds respectfully request that, for this limited purpose, the Court enter an order granting their request for production of the following materials: all documents that the defendants in the Actions have produced, or will be producing, to the SEC, any United States Attorney, any State's Attorney General, the Financial Industry Regulatory Authority, Inc., and any other regulatory, governmental, or investigative agency, or other private parties involved in reviewing the facts and circumstances giving rise to these Actions.

## FACTUAL BACKGROUND

During the Class Period, the Defendants in the Actions knowingly and/or recklessly made a series of materially false and misleading statements and omissions of material fact concerning Citigroup's exposure to losses based upon the Company's creation and/or sponsorship of numerous off-balance sheet VIEs relating to the sale of mortgage-backed securities. Citigroup's VIEs included CDOs, structured investment vehicles ("SIVs"), asset-backed commercial paper conduits, and other "structured finance" vehicles. Despite Citigroup's implicit and explicit obligations to provide liquidity and other services to its VIEs, the Defendants failed to disclose such obligations and further failed to account properly for the VIEs.

As Defendants began to disclose the truth regarding Citigroup's exposure to risks associated with its VIEs, the price of Citigroup common stock declined in a series of material steps from $47.10 per share on October 1, 2007 to $30.73 per share on November 21, 2007 as the market digested the true facts. Each such disclosure removed a portion of the artificial inflation in the price of Citigroup's common stock and directly caused Plaintiffs and the other members of the Class to suffer sizeable damages. At the end of the Class Period, Citigroup's common stock had declined by $25.68 (46%) per share from its Class Period high of $56.41, representing an erasure of $122 billion in market capitalization. Based upon Defendants' fraud alleged herein,

Citigroup's common stock was the worst performing stock in the Dow Jones Industrial Average for 2007.

Moreover, during the Class Period and continuing currently, many regulatory and governmental bodies, including the SEC, certain United States Attorneys, the Financial Industry Regulatory Board, Inc., and other regulatory bodies as well as private parties, began to demand that Citigroup produce certain relevant documents based upon the facts and circumstances that gave rise to these Actions. The Global Pension Funds also seek preservation of these documents as well as other documents that have not been produced, but are nevertheless relevant to these Actions.

## ARGUMENT

## I.    THE PSLRA PROVIDES THE COURT WITH DISCRETION TO LIFT THE DISCOVERY STAY IN CASES WHERE THE DOCUMENTS REQUESTED HAVE ALREADY BEEN PRODUCED TO REGULATORY AUTHORITIES PURSUANT TO ONGOING INVESTIGATIONS

Congress enacted the discovery stay under the PSLRA in 1995 based on the perception that overzealous attorneys were abusing the federal securities laws by filing meritless claims. *See* H.R. Conf. Rep. No. 104-369, at 31, *reprinted in* 1995 U.S.S.C.A.N. 730 ("House Conf. Report" hereinafter).[1] *See also*, *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 105 (D. Mass. 2002) (internal citations omitted). However, the discovery stay can be lifted at the discretion of the Court under specific circumstances and with qualification:

> In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, ***unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.***

---

[1] A copy of the Conference Report is attached as Ex. A to the Entwistle Declaration filed contemporaneously herewith.

15 U.S.C. §78u-4(b)(3)(B) (emphasis added). *See also Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 167 (S.D.N.Y. 2001) (citing *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("If, . . . Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed.").

Indeed, courts often lift the stay where, as here, the relief requested relates to documents already produced in connection with pending investigations or related litigation to prevent undue prejudice. *See, e.g.*, *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (lifting the stay as to documents produced in investigations by the SEC and New York Stock Exchange); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004) (lifting the stay as to documents produced in internal and external investigations of foreign defendant); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (lifting stay as to documents produced to the SEC, U.S. Attorney, and law firm conducting internal investigation).

The PSLRA discovery stay has also been partially lifted in cases where documents have already been produced following detailed regulatory investigations. *See Newby v. Enron Corp.*, Civil Action No. H-01-3624 Consolidated Cases, slip. op. at 2 (S.D. Tex. Aug. 15, 2002) (PSLRA was "not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case")[2] (citing *Newby v. Enron Corp.*, Civil Action No. H-01-3624 Consolidated Cases, slip. op. at 3-4 (S.D. Tex. Feb. 27, 2002)).[3] Moreover, the PSLRA's legislative history reveals that Congress

---

[2] A copy of Judge Harmon's August 15, 2002 Order is attached as Ex. B to the Entwistle Declaration.

[3] A copy of Judge Harmon's February 27, 2002 Scheduling Order is attached as Ex. C to the Entwistle Declaration.

included the discovery stay provision in the statute in an attempt to remedy two perceived abuses. First, Congress sought to prevent plaintiffs from filing "frivolous lawsuits" initiated only to conduct "fishing expedition" discovery in the hopes of finding a sustainable claim. *See* S. Rep. No. 104-98 at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693 (the "Senate Report");[4] *see also WorldCom*, 234 F. Supp. 2d at 305; *Lernout*, 214 F. Supp. 2d at 106. Second, Congress enacted the discovery stay to prevent plaintiffs from bringing "strike suits" in which "the cost of discovery often forces innocent parties to settle frivolous securities class actions." House Conf. Report at 32. Neither of Congress' concerns in enacting the PSLRA discovery stay is even remotely implicated here.

The investigation of Citigroup's business practices by state and federal authorities, and the severe drop in value of Citigroup stock following the announcement of Citigroup's massive write-down on the Company's SIVs and CDOs, support the notion that this case is not frivolous. The Global Pension Funds seek only the limited discovery of documents that the Defendants have already compiled, reviewed, and produced to the regulatory bodies and those documents that will be produced to these respective regulatory bodies.

Accordingly, Plaintiffs are neither imposing costly discovery requests upon defendants nor attempting to gather information to support frivolous claims. Therefore, "[n]one of the perceived abuses addressed by Congress [is] present in this case." *Tobias*, 177 F. Supp. 2d at 166; *see also WorldCom*, 234 F. Supp. 2d at 305 (granting lead plaintiff's request for production of documents already produced to regulatory authorities); *Vacold LLC and Immunotherapy, Inc. v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 U.S. Dist. LEXIS 1589, at *24 (S.D.N.Y. Feb. 16, 2001) (lifting stay for particularized discovery after finding that the "request does not implicate a

---

[4] A copy of the Senate Report is attached as Ex. D to the Entwistle Declaration.

concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

>   **A.    The Global Pension Funds Bring A Meritorious Securities Fraud Case Against The Defendants And Are Therefore Not Abusing Discovery**

The Global Pension Funds have not commenced meritless litigation to initiate a "fishing expedition" in order to gather supportive documents for properly stating a securities fraud claim under federal securities laws. The combination of several key facts, including Citigroup's lack of transparency concerning its exposure to losses based upon the Company's creation and/or sponsorship of numerous off-balance sheet VIEs relating to the sale of mortgage-backed securities, Citigroup's use of undisclosed "Liquidity Puts" in connection with the "sales" of its CDOs leaving Citigroup exposed to approximately $25 billion in liability of worthless CDOs, and the Company's November 4, 2007 announcement disclosing that the Company was undertaking a $11 billion write-down of its portfolio consisted of paper issued by CDOs, clearly establish that this securities fraud case is not frivolous. Indeed, Citigroup's misconduct, lack of transparency, and accounting failures provide the basis for incredibly meritorious claims under the Exchange Act and the PSLRA.

Of Citigroup's troubled $55 billion subprime portfolio that led to the Company's $11 billion write-down announced on November 4, 2007, ***almost half*** of that portfolio consisted of paper issued by CDOs that was returned to Citigroup as a result of the previously undisclosed Liquidity Puts. The decline in the fair market value of these CDOs accounts for almost half ($25 billion) of the direct exposure cited by the Company as the reason for the massive write-down announced last month.

Citigroup's use of undisclosed Liquidity Puts in connection with its CDO "sales" appears to be the most egregious conduct underlying the fraud claims against the Company. Citigroup

9

employed Liquidity Puts to attract "buyers" to the Company's "sales" of CDO debt instruments. The Liquidity Puts gave Citigroup's counterparties the right to sell the assets back to Citigroup at the original purchase price in the event that the CDO purchaser could not find an alternative market for such assets. The Liquidity Puts effectively turned the majority of Citigroup's CDO portfolio into off-balance sheet transactions. While, on the one hand, Citigroup was purportedly taking subprime debt off its books by selling CDOs (which Citigroup publicly insisted were all non-recourse), Citigroup was in fact retaining the liability for the CDOs **off-balance sheet** by giving the CDO buyer the ability to sell the paper issued by the CDOs back to Citigroup at face value. Thus, the "sales" to which Liquidity Puts attached were mere fiction.

Citigroup **first** disclosed its pervasive use of Liquidity Puts during a November 5, 2007 telephone conference with analysts. The Company's failure to earlier mention the massive risk connected to its Liquidity Puts violated Citigroup's disclosure obligations under the federal securities laws and Generally Accepted Accounting Principles ("GAAP"). Specifically, GAAP, which the SEC and the accounting profession recognize as the rules, conventions, and procedures necessary to define accepted accounting practices at a given time, requires that a company's financial statements disclose contingencies when it is reasonably possible that the company may incur a loss in connection with such contingency. *See* SFAS No. 5 ¶10. When circumstances are such that a loss is reasonably possible, a company's disclosure should: (1) state the basis of the contingency; and (2) estimate the potential loss or range of loss that such contingency may produce. Defendants wholly failed to make the required disclosures concerning the Liquidity Puts, which created risk exposure as soon as the transactions involving Liquidity Puts were consummated. The necessity of disclosure only intensified as the default rates escalated on the mortgage assets underlying Citigroup's CDOs beginning in August 2006.

*See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 U.S. Dist. LEXIS 19593, at *25-26 (S.D.N.Y. Sept. 30, 2004) (explaining that defendants owed a duty to shareholders to disclose adverse information when they developed a consensus that the "brand was at risk"). The documents requested herein directly relate to this issue.

Defendants cannot attempt in good faith to persuade the Court that this litigation is frivolous in the face of these facts. In this regard, the defendants have no sound basis for urging this court to sustain a stay on discovery especially in light of the fact that the documents the Global Pension Funds request for discovery have already been produced or will be produced to certain regulatory and governmental investigators. Thus, Congress' concern that plaintiffs often commence groundless litigation solely to initiate a fishing expedition for supportive documents is not present here. *See WorldCom*, 234 F. Supp. 2d at 305. Rather, a suit against the defendants is meritorious, and the Global Pension Funds will eventually be entitled to conduct the broad discovery that the Federal Rules of Civil Procedure permit and prevail on the merits. *See Enron*, slip. op., at 3 (S.D. Tex. Aug. 15, 2002) (recognizing that when production of certain documents has already been made, it does not make sense to keep such documents from a party "because of a statute designed to prevent discovery abuse").

### B.    Defendants Are Not Unduly Burdened By Producing Documents That Have Already Been Produced To Regulatory Authorities

The Global Pension Funds' request for a partial lifting of the PSLRA discovery stay does not implicate Congress' concern that costs of discovery undertaken in a securities case before the sufficiency of a complaint is tested may coerce innocent parties into a premature settlement. *See* House Conf. Report at 32. The Global Pension Funds' request is limited to discovery of documents that have already been produced or will be produced to regulatory and governmental authorities. Therefore, production of these documents to the Global Pension Funds will not

cause undue burden on Defendants. *See In re Tyco, Int'l Ltd. Multidistrict Litig.*, MDL No. 02-1335-B, slip op. at 11 (D.N.H. Jan. 29, 2003).[5]

In the *Enron* litigation, Judge Melinda Harmon addressed a similar issue where securities plaintiffs sought to obtain copies of all documents and materials that Enron produced in connection with related inquiries that regulatory authorities, including the U.S. Department of Justice and the SEC, were conducting. *See id.* at 1. In granting the partial lifting of the discovery stay that the securities plaintiffs sought, Judge Harmon recognized that the requested discovery would not burden the defendants because there, as here, such documents had already been "found, reviewed, and organized." *Id.* at 3. Judge Harmon held that the PSLRA discovery stay should not be applied to the securities plaintiffs' request because "[i]n a sense this discovery has already been made, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse." *Id.* Other courts have similarly decided that the PSLRA discovery stay does not apply to documents already produced to other parties in related proceedings. *See, e.g.*, *Tyco*, slip op. at 11 ("defendants will not incur any additional costs if the Securities Actions plaintiffs are given access to the documents"); *WorldCom*, 234 F. Supp. 2d at 306 (because documents have already been produced to others it is "easily understood" that defendants have not raised "undue burden" as an obstacle to the requested production). The reasoning of each of these courts applies equally here.

In addition to the foregoing, the Global Pension Funds note that Citigroup as well as the other defendants must soon make the initial disclosures required under Fed. R. Civ. P. 26(a)(1) to the plaintiffs involved in the parallel shareholder derivative and ERISA actions, including "a copy, or a description by category and location of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or

---

[5] A copy of this decision is attached as Ex. E to the Entwistle Declaration.

control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Clearly, such disclosures would likely include all documents that the Global Pension Funds seek pursuant to this motion.

For these additional reasons, it is clear that the Global Pension Funds have not advanced this request for limited discovery in the hope that "corporate defendants will settle [this] action rather than bear the high cost of discovery." *WorldCom*, 234 F. Supp. 2d at 305.

## II.    THE GLOBAL PENSION FUNDS' REQUEST FALLS UNDER THE PSLRA EXCEPTIONS TO THE DISCOVERY STAY

### A.    The Global Pension Funds' Request For Discovery Is Sufficiently Particularized

The PSLRA provides this Court with the discretion to lift the discovery stay if the Court finds that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. §78u-4(b)(3)(B). As an initial matter, this Court must determine whether the limited discovery that Plaintiff seeks is sufficiently particularized. Courts have recognized that "the concept of particularized discovery is a nebulous one, and the phrase is not devoid of ambiguity . . . ." *Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998) (rejecting request to lift the discovery stay because items sought "encompass an open-ended, boundless universe of discovery"). It appears clear, however, that "the party seeking discovery under the exception must adequately specify the target of the requested discovery . . . ." *Lernout*, 214 F. Supp. 2d at 108. Moreover, courts have identified requests that "do and do not qualify as sufficiently particularized." *Id.* (citing various cases). Because the Global Pension Funds seek only *copies* of documents that the Defendants have produced or will produce in connection with the regulatory and governmental investigations discussed herein, the Global Pension Funds' request is sufficiently particularized.

Other courts have found that a request for documents already produced in connection with concurrent investigations to be particularized enough to order a limited lifting of the PSLRA discovery stay for production of such documents. For example, in *WorldCom*, lead plaintiff sought "a clearly defined universe of documents, specifically certain documents which WorldCom has already produced in connection with other identified proceedings." *WorldCom*, 234 F. Supp. 2d at 306. Because the lead plaintiff in *WorldCom* sought a limited collection of documents and were not engaged in a "fishing expedition," Judge Denise Cote granted lead plaintiff's request for the documents already produced in other proceedings, reasoning that "defendants cannot call upon the ambiguous concept of 'particularized' discovery to bend Section 78u-4(b)(3)(B) to a purpose for which it was not intended." *Id.*

Drawing upon the reasoning of Judge Harmon in *Enron* and Judge Cote in *WorldCom*, Chief Judge Barbadoro granted the *Tyco* securities action plaintiffs' motion to lift the PSLRA discovery stay to obtain access to documents produced in parallel ERISA and derivative actions. *See Tyco*, slip op. at 10-11. In so doing, the Court concluded that plaintiffs' request for the documents in the ERISA and derivative cases was "'particularized' because it is limited to the discovery documents that have already been produced to others . . . ." *Id.* at 11. The same result should apply here. The Global Pension Funds' request for a limited production is sufficiently particularized, and there is no burden upon Citigroup or any of the other defendants because these Defendants have "already found, reviewed, and organized the documents." *Enron*, slip op. at 3 (S.D. Tex. Aug. 15, 2002).

## B. The Global Pension Funds And The Class Will Suffer Undue Prejudice If The Stay Is Not Lifted

The requested partial lifting of the PSLRA discovery stay is required to prevent the Global Pension Funds and the Class from suffering undue prejudice. Undue prejudice in the

context of the PSLRA discovery stay is defined as "improper or unfair detriment that need not reach the level of irreparable harm." *Lernout*, 214 F. Supp. 2d at 107; *see also Vacold*, 2001 U.S. Dist. LEXIS 1589, at *22-23 (undue prejudice is "'improper or unfair treatment' amounting to something less than irreparable harm"). Employing these accepted standards for "undue prejudice," several courts have ordered that the PSLRA discovery stay be lifted to avoid improper or unfair treatment to securities plaintiffs. *See, e.g.*, *Lernout*, 214 F. Supp. 2d at 109 (lifting the PSLRA discovery stay to prevent the "significant danger of further delay"); *Anderson v. First Sec. Corp.*, 157 F. Supp. 2d 1230, 1242 (D. Utah 2001); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99 CIV. 342(DLC), 1999 U.S. Dist. LEXIS 5439, at *5 (S.D.N.Y. Apr. 15, 1999).

  As set forth above, numerous investigations into the fraudulent conduct that caused the Global Pension Funds and the Class to suffer massive investment losses are underway in the United States. These investigations include those being conducted by the SEC, certain United States Attorneys, the Financial Industry Regulatory Authority, Inc., and other regulatory, governmental, and investigative agencies as well as private parties. Each of the authorities has received documents in connection with its investigations, and none of them face any comparable impediment to developing their case. As this Court is aware, the plaintiffs in the parallel shareholder derivative and ERISA actions will soon be permitted to engage in broad discovery, and will also soon possess much more information than the limited discovery sought herein to develop their respective claims.

  In fact, *only* the Global Pension Funds and the Class will be hampered and delayed in pursuing their claims. If the Global Pension Funds do not have access to the documents that all other parties in other actions and the investigating bodies already possess or will soon possess,

then the Class will be left standing at the starting line indefinitely while all other parties are free to develop evidence in support of their divergent agendas.  In such a situation, courts have recognized that a plaintiff class will suffer undue prejudice if it is forced to "ride out" the PSLRA discovery stay before developing its case.  *See, e.g.*, *Tyco*, slip op. at 10-11; *WorldCom,* 234 F. Supp. 2d at 305-06; *Enron*, slip op. at 3 (S.D. Tex. Aug. 15, 2002).

In other recent cases in which certain defendants have already produced documents to various governmental entities, regulatory bodies, or other plaintiff groups conducting investigations and pursuing litigation based upon the same conduct alleged in a securities action, courts have permitted the securities plaintiffs to discover those documents.  For example, when securities plaintiffs sought access to documents produced in related ERISA and derivative actions, the *Tyco* court lifted the PSLRA discovery stay to grant the securities plaintiffs access to such documents.  In so doing, the court held:

> [t]his approach makes sense in a case like this where (1) the Securities Action plaintiffs would be at a serious disadvantage if they are denied access to documents that are produced to the other plaintiffs and government investigators; (2) the defendants will not incur any additional costs if the Securities Actions plaintiffs are given access to the documents; (3) keeping all parties on an equal footing with respect to discovery serves important case management interests in this complex litigation; and (4) none of the claims at issue are frivolous.

*Tyco*, slip op. at 11.  Accordingly, lifting the PSLRA stay may be consistent with having the Actions and the parallel shareholder derivative and ERISA actions proceed on the same track.

Similarly, in *WorldCom*, Judge Cote lifted the PSLRA discovery stay to allow particularized discovery of documents already produced in connection with other identified proceedings, including governmental investigations and a related ERISA class action, for reasons that apply to the Global Pension Funds' present application:

> Based upon the unique circumstances of this case, the documents requested by [the securities lead plaintiff] must be produced in order to prevent undue

> prejudice to the interests of the putative investor class it represents. All of the investigations and proceedings concerning WorldCom are moving apace. Without access to documents already made available to the U.S. Attorney, the SEC, and in whole or in part to the WorldCom's Creditors Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [the securities lead plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings.

*WorldCom*, 234 F. Supp. 2d at 305. As discussed above, numerous investigations into Citigroup's suspected fraudulent conduct are underway, and discovery in the derivative and ERISA actions will soon commence. The Global Pension Funds and the Class should not be unduly prejudiced by rigid adherence to the PSLRA discovery stay in circumstances in which Congress never intended the stay to apply.

Allowing the particularized discovery that the Global Pension Funds now seek is consistent with the letter and spirit of the PSLRA. The discovery stay was never intended to handcuff legitimate plaintiffs in their efforts to prosecute indisputably meritorious claims on behalf of investors who have suffered a far greater injury than all other interested parties, especially when such other parties are free to pursue their divergent claims and interests without delay. As an *en banc* panel of the Sixth Circuit has cautioned, the PSLRA would "hardly serve its purpose 'to protect investors and to maintain confidence in the securities markets'" if it were misconstrued to "become a choke-point for meritorious claims. The danger of muzzling plaintiffs is enhanced by the stay provisions of the PSLRA, which authorize suspension of all discovery pending a motion to dismiss." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001) (en banc) (internal quotes omitted). Congress bestowed upon the courts the discretion to lift the PSLRA discovery stay to avoid the very type of undue prejudice that the Class will face here if all the Global Pension Funds' efforts to develop their claims are effectively tolled for an

indefinite, but likely considerable, period of time while all other interested constituencies are free to advance their divergent interests. The Global Pension Funds respectfully request that this Court exercise its discretion to order the requested partial lifting of the PSLRA discovery stay to prevent the undue prejudice that Citigroup's injured investors will suffer if this clearly meritorious action is forced to proceed at least several months (and likely longer) behind all other proceedings. *See Tyco,* slip op. at 10-11; *WorldCom*, 234 F. Supp. 2d at 305-06; *Enron*, slip op. at 3 (S.D. Tex. Aug. 15, 2002).

###   C.    The Global Pension Funds' Request Is Also Necessary To Preserve Evidence

By its terms, the PSLRA grants this Court discretion to lift the discovery stay when it is "necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. §78u-4(b)(3)(B). As set forth in more detail in the Global Pension Funds' Motion To Require Related Parties To Preserve Documents And Other Evidence, and the related memorandum of law filed in support thereof, filed on January 7, 2008, the Global Pension Funds seek an order requiring the Related Entities (as defined within the motion papers) to preserve all documents and electronically stored information relevant to the allegations underlying the above captioned actions that are within the Related Entities possession, custody, or control.

## CONCLUSION

For all of the foregoing reasons, the Global Pension Funds respectfully request that the Court grant their Motion for an order partially lifting the PSLRA discovery stay as set forth herein and in the accompanying Proposed Order.

Dated: January 7, 2008                    Respectfully,

**ENTWISTLE & CAPPUCCI LLP**

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone: (212) 894-7200

Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.
SCHIFFRIN BARROWAY TOPAZ
        & KESSLER LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

Attorneys for Plaintiffs Public Employees'
Retirement Association of Colorado, Tennessee
Consolidated Retirement System, Sjunde AP-
Fonden, Fjärde AP-Fonden, and Pensionskassernes
Administration A/S