**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, TENNESSEE CONSOLIDATED RETIREMENT SYSTEM, SJUNDE AP-FONDEN, FJÄRDE AP-FONDEN, and PENSIONSKASSERNES ADMINISTRATION A/S, Individually and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiffs, | No. 1:08-cv-0135 (SHS) |
| v. | ECF CASE |
| CITIGROUP INC., CHARLES O. PRINCE, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN, TODD S. THOMSON, ROBERT DRUSKIN, THOMAS G. MAHERAS, MICHAEL STUART KLEIN, DAVID C. BUSHNELL, JOHN C. GERSPACH, STEPHEN R. VOLK, GEORGE DAVID and KPMG LLP, | |
| Defendants. | |
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiff, | No. 1:07-cv-9901 (SHS) |
| vs. | ECF CASE |
| CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN, | |
| Defendants. | |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiff | No. 1:07-cv-10258 (SHS) |
| v. | ECF CASE |
| CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN, | |
| Defendants. | |

JUDY G. FISHER,

                    Plaintiff,

-    against -                                                    No. 08-cv-0136 (SHS)

CITIGROUP INC., ET AL.,

                    Defendants.

**MEMORANDUM OF LAW OF THE GLOBAL PENSION FUNDS IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, FOR APPOINTMENT AS LEAD PLAINTIFFS, AND FOR SELECTION OF LEAD COUNSEL**

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Stephen D. Oestreich, Esq. (SO-8933) (Of Counsel)
Jonathan H. Beemer, Esq. (JB-0458)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

**SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.

*Attorneys for Plaintiffs Public Employees' Retirement Association of Colorado, Tennessee Consolidated Retirement System, Sjunde AP-fonden, Fjärde AP-fonden, and Pensionskassernes Administration A/S and Proposed Lead Counsel for the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 2

    A.    The Global Pension Funds Are The Presumptively Most Adequate
         Plaintiffs Under The PSLRA ................................................................................. 2

    B.    The ATD Group is Inadequate and Atypical ......................................................... 4

    C.    The Remaining U.S. Public Funds......................................................................... 5

    D.    David Garden's Application ................................................................................... 6

STATEMENT OF FACTS ................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    THE GLOBAL PENSION FUNDS ARE THE PRESUMPTIVELY MOST
    ADEQUATE PLAINTIFFS TO LEAD THIS LITIGATION ................................. 7

    A.    The Global Pension Funds Possess The Largest Financial Interest In The
         Relief Sought By The Class................................................................................... 8

    B.    The Global Pension Funds' Claims Are Typical of the Class's Claims ................ 10

    C.    The Global Pension Funds Have Demonstrated That They Are
         Capable Of Adequately Representing the Interests of the Class ........................... 11

II.    ALL OTHER APPLICATIONS SHOULD BE DENIED ..................................... 13

    A.    The ATD Group Is Inadequate and Atypical ...................................................... 14

         1.    The ATD Group Has Taken Public Positions That Are Hostile to
              the Class and Raise Serious Questions as to The ATD Group's
              True Motivation ...................................................................................... 14

         2.    The ATD Group's Claims Are Atypical ................................................. 18

    B.    The Remaining U.S. Public Funds....................................................................... 20

    C.    Garden Has A Comparatively Small Financial Interest In This Litigation
         And Has Demonstrated His Inadequacy By Selecting A Factually
         Indefensible Class Period..................................................................................... 20

CONCLUSION................................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................ 14

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ....................................................... 7, 11, 12, 14

*Coopersmith v. Lehman Bros, Inc.*,
   344 F. Supp. 2d 783 (D. Mass. 2004) .................................................................. 18

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................ 15

*Grace v. Perception Tech. Corp.*,
   128 F.R.D. 165 (D. Mass. 1989) .......................................................................... 19

*In re Doral Fin. Corp. Sec. Litig.*,
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) ................................................................... 9

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2d Cir. 1992) ................................................................................. 18

*In re Espeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................. 9

*In re Indep. Energy Holdings PLC, Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) ......................................................................... 19

*In re Initial Pub. Offering Sec. Litig.*,
   214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................... 10

*In re Livent, Noteholders Sec. Litig.*,
   211 F.R.D. 219 (S.D.N.Y. 2002) ......................................................................... 19

*In re Oca, Inc. Sec. & Deriv. Litig.*,
   No. 05-2165 (E.D. La. Nov. 18, 2005) ............................................................... 15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................... 7, 14

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999).................................................................................. 9

*In re Peregrine Sys, Inc. Sec. Litig.*,
   No. 02cv70-J (RBB), 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. Oct. 9, 2002) ....................... 18

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001) .................................................................. 18

*In re Veeco Instruments Inc., Sec. Litig.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ...................................................................... 9, 16

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................. 14

*LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending Inc.*,
   No. 04 Civ. 5452 (PKL), 2007 U.S. Dist. LEXIS 59303 (S.D.N.Y. Aug. 13, 2007) .............. 16

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) ................................................................................................. 15

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ................................................................................................. 10

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001) ................................................................................................. 10

*Shi v. Sina Corporation*,
   No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005)................. 14

*Shiring v. Tier Tech., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) .......................................................................................... 19

*Sofran v. LaBranche & Co., Inc.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ......................................................................................... 13

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) .................................................................................... 14, 18

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416 (SHS) (AJP), 2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21,
   2007) ...................................................................................................................................... 8

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ......................................................................................... 10

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
   No. 05 Civ. 04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006) ................ 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................. 1, 2

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................... 14

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ......................................................................................... 2

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ..................................................................................... 7

15 U.S.C. 78u-4(b)(4) ........................................................................................................... 15

Section 21D(b)(3)(B) .............................................................................................................. 1

**Rules**

Fed. R. Evid. 602 ................................................................................................................... 18

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ............................... 13

S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679 ................................................ 13

Plaintiffs, Public Employees' Retirement Association of Colorado ("Colorado PERA"), Tennessee Consolidated Retirement System ("TCRS"), Sjunde AP-fonden ("AP7"), Fjärde AP-fonden ("AP4"), and Pensionskassernes Administration A/S ("PKA") (collectively, the "Global Pension Funds"), on behalf of themselves and the Class defined herein, respectfully submit this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in further support of their Motion for the entry of an order: (i) consolidating the above-referenced actions (the "Actions") and any related securities actions that may be filed; (ii) appointing the Global Pension Funds as Lead Plaintiffs for a class (the "Class") of all persons and entities that purchased Citigroup Inc. ("Citigroup" or the "Company") common stock from January 2, 2004 through November 21, 2007 (the "Class Period"); and (iii) approving the Global Pension Funds' selection of the law firms of Entwistle & Cappucci LLP and Schiffrin Barroway Topaz & Kessler, LLP as Co-Lead Counsel.

In enacting the PSLRA, Congress provided a statutory framework inviting interested parties to apply to the Court to serve the best interests of the class. To assist courts and to assure that securities class action lawsuits were led by the best qualified applicant (or applicants), Congress defined the boundaries of the selection process by legislating that the applicant with the greatest financial interest that satisfies the typicality and adequacy requirements of the Rule 23 of the Federal Rules of Civil Procedure is presumptively the applicant best suited to advance and protect the interests of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## PRELIMINARY STATEMENT

The Global Pension Funds have the largest financial interest in the relief sought by the Class of any lead plaintiff applicant that also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Under PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Global Pension Funds are, therefore, presumed to be the most adequate plaintiffs to lead this litigation. The PSLRA instructs that other lead plaintiff applicants can only rebut the presumption that the Global Pension Funds are the most adequate plaintiffs by submitting "proof" that the Global Pension Funds will not adequately represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists.

### A.    The Global Pension Funds Are The Presumptively Most Adequate Plaintiffs Under The PSLRA

During the Class Period alleged in the Global Pension Funds' Complaint[1] (January 2, 2004 through November 21, 2007), the Global Pension Funds lost $132,020,643 on a first-in, first-out ("FIFO") basis and $50,228,955 on a last-in, first-out ("LIFO") basis.[2] During the longer of the two class periods alleged in complaints filed before the Global Pension Funds filed their Complaint (January 1, 2004 through November 5, 2007), the Global Pension Funds lost

---

[1] References to the "Global Pension Funds' Complaint" or the "Complaint" are references to the complaint that the Global Pension Funds filed on January 7, 2008 in the action captioned *Public Employees' Retirement Association of Colorado, et al .v. Citigroup Inc., et al.* No. 08-cv-0135 (SHS) (S.D.N.Y.). References to specific paragraphs within the Complaint are designated as (¶ __.)

[2] The basis for slight revisions to the loss figures set forth above, as compared to the loss figures provided in the Global Pension Funds' January 7, 2008 submissions, is provided in the Supplemental Declaration of Andrew J. Entwistle filed on January 14, 2007. In addition, in response to an inquiry from counsel for the U.S. Public Funds, the Global Pension Funds supplied opening balance information in connection with their claimed losses. *See* Exhibit 1 to the accompanying Declaration of Andrew J. Entwistle in Further Support of the Global Pension Funds' Motion (the "January 28, 2008 Entwistle Declaration"). References to Exhibits within this Declaration are sometimes designated as "Ex. __."

$125,453,877 on a FIFO basis and $47,624,198 on a LIFO basis.  Thus, the Global Pension

Funds have the largest financial interest by far of any lead plaintiff applicant.

The Global Pension Funds' claims are typical of the Class's claims.  Moreover, the

Global Pension Funds will adequately represent the Class as they are sophisticated institutional

investors with experience serving as fiduciaries for their own beneficiaries as well representing

class members in securities actions (including Colorado PERA's recovery of more than $1

billion for shareholders in *In re Royal Ahold Securities & ERISA Litigation* ("*Ahold*") in the

District of Maryland and recovery of $300 million in *In re Oxford Health Plans Securities*

*Litigation* ("*Oxford*") in this District).  The separate Declarations of authorized representatives of

Colorado PERA, TCRS, AP4, AP7 and PKA[3] establish that each of the Global Pension Funds is

dedicated to jointly prosecuting this action as a cohesive group acting in the best interests of the

Class.  The Global Pension Funds have also negotiated agreements governing the prosecution of

these related securities actions as well as attorneys' fees and expenses on terms beneficial to the

Class.  The Global Pension Funds are pleased to submit copies of these agreements for the

Court's *in camera* review.

No other applicant can credibly contend that the Global Pension Funds are inadequate to

represent the Class.  The investigation and analyses that have resulted in the detailed allegations

set forth in the Global Pension Funds' Complaint, their Motion to Require Related Parties to

Preserve Documents and Other Evidence (the "Preservation Motion") and their Motion for an

Order Partially Lifting the Private Securities Litigation Reform Act Discovery Stay (the "Stay

Lift Motion") demonstrate the vigor with which the Global Pension Funds are pursuing the

---

[3] These Declarations are attached as Exhibits 2, 3, 4, 5, and 6, respectively, to January 28, 2008
Entwistle Declaration.

Class's claims.  These affirmative steps, which no other applicant has taken, evidence the Global

Pension Funds' initiative and dedication to protecting the Class's interests.

Because the Global Pension Funds have the largest financial interest and are otherwise

typical and adequate, there is no need to examine the other applicants' potential typicality or

adequacy.  Nevertheless, looking beyond the statutory presumption that the Global Pension

Funds should be appointed to lead this litigation compels the conclusion that other movants are

atypical and/or inadequate.

### B.    The ATD Group is Inadequate and Atypical

Incredibly, the ATD Group has publicly expressed views that are directly antagonistic to

the interests of the Class, including the following statement posted by David K. Whitcomb,

Ph. D., the ATD Group's "Chairman Emeritus" on WSJ.com

(http://blogs.wsj.com/marketbeat/2007/11/05/erasing-120-billion-in-market-cap):

> ***Citi's loss of $50 billion in market cap is a ridiculous over-***
> ***reaction.***  While there may be write-downs in excess of what they
> have taken and forecast to date, there is no possible way Citi could
> lose $50 billion.  That would be more than half of their total
> exposure.  ***The credit instruments in question are just not that***
> ***bad.***
>
> By way of full disclosure, I should note that I am Chairman
> Emeritus of ATD, which was sold to Citi recently, so ***I hold a lot***
> ***of Citi stock and am NOT a disinterested party.***  However, as a
> retired professor of finance (Rutgers Univ), ***I'd say this whether I***
> ***owned Citi stock or not.***[4]

Comment by David K. Whitcomb, PHD - November 5, 2007 at 3:46 pm.

---

[4] Unless otherwise indicated, emphasis is added to the statements quoted herein. With respect to
Dr. Whitcomb's statement above, the capitalization of the word "NOT" appeared in Dr.
Whitcomb's original written statement.  A copy of the web page on which Dr. David K.
Whitcomb posted his antagonistic comments is attached as Exhibit 7 to the January 28, 2008
Entwistle Declaration with the referenced portions highlighted for the Court's convenience.

The statement above, in which Dr. Whitcomb professes that the decimation of Citigroup's common stock price is based upon a market overreaction rather than Defendants' fraud, summarily disqualifies the ATD Group's application to represent the Class. As set forth in detail below in Section II (A), the ATD Group suffers from numerous additional inadequacies and unique defenses that render its claims atypical of the claims of the Class. In this regard, the ATD Group received all of its Citigroup shares in an acquisition toward the end of the Class Period pursuant to which ATD became part of Citi Markets & Banking (a Citigroup unit directly involved in the fraud at issue). Moreover, public disclosures concerning Citigroup's $690 million acquisition of ATD, which closed on October 3, 2007, indicate that Citigroup agreed to indemnify ATD for certain securities related claims.

### C.      The Remaining U.S. Public Funds

On January 18, 2008, counsel for the Division of Investment of the Treasury of the State of New Jersey ("New Jersey") withdrew New Jersey's lead plaintiff application based upon an acknowledged conflict of interest.[5] At the same time that he signed New Jersey's Certification and the U.S. Public Funds' "Joint Declaration"[6] in these proceedings, New Jersey Division of Investment Director, William G. Clark, was negotiating New Jersey's $400 million investment[7] in Citigroup, concerning which he stated: ***"[t]hese investments give the division the opportunity to increase its exposure to two of the strongest franchises in the global financial services***

---

[5] *See* Notice of Withdrawal of New Jersey Division of Investment From the U.S. Public Fund Group, a copy of which is attached as Exhibit 8 to the January 28, 2008 Entwistle Declaration. New Jersey's counsel did not indicate whether it would continue to represent STRS/SURS following New Jersey's withdrawal.

[6] *See* Exhibits B and H to the January 7, 2008 Declaration of Gerald H. Silk (the "Silk Decl.").

[7] *See* David Enrich, Robin Sidel and Susanne Craig, "*World Rides to Wall Street's Rescue: Citigroup-Merrill Tap Foreign-Aid Lifelines; Damage Tops $90 Billion*," The Wall Street Journal, January 16, 2008, at A1, attached as Exhibit 9 to the January 28, 2008 Entwistle Declaration.

*marketplace.'*[8]   The remaining U.S. Public Funds, the State Teachers Retirement System of Ohio ("Ohio STRS") and the State Universities Retirement System of Illinois ("Illinois SURS") (together, "STRS/SURS"), who sought appointment here as a single plaintiff along with New Jersey, cannot reconcile New Jersey's actions and statements with STRS/SURS' contemporaneous joint pledge to serve as co-fiduciaries acting cohesively and in the best interests of the Class here.  As noted below in Section II (B), the Court's inquiry concerning the remaining U.S. Public Funds should begin and end with the determination that the Global Pension Funds have the largest financial interest and are otherwise typical and adequate.

      **D.     David Garden's Application**

As mentioned in Section II (C), David Garden's ("Garden") financial interest in this litigation does not warrant further consideration of his application.

**STATEMENT OF FACTS**

Citigroup is a worldwide financial services company, and its operations and actions have a global impact.  (*See, e.g.,* ATD Br. at 1, U.S. Pension Funds' Br. at 3, Garden Br. at 2.)  The fraudulent conduct alleged in detail in the Global Pension Funds' Complaint caused Citigroup's shareholders all over the world to incur substantial damages.  The Company's recent actions and disclosures only reinforce the global impact of the conduct at issue and the global composition of the Class.

---

[8]  *See* "NJ Invests in Citigroup, Merrill Lynch," Associated Press, January 15, 2008, attached as Exhibit 10 to the January 28, 2008 Entwistle Declaration.  New Jersey's recent investment of $400 million in new Citigroup preferred shares is *more than four times* the $96,830,318.02 that New Jersey invested in Citigroup common stock during the period from January 1, 2004 through November 5, 2007.

On January 15, 2008, Citigroup announced its abysmal financial results for the Fourth Quarter of 2007.[9]  In so doing, the Company announced a net loss of $9.83 billion, a loss of $1.99 per share, a 40 percent dividend reduction, and additional write-downs of $18.1 billion in subprime related direct exposure (bringing the total Third Quarter and Fourth Quarter 2007 write-downs to more than $24 billion and losses to more than $12 billion).  Citigroup's most recent losses are direct results of the fraudulent misrepresentations and omissions of material fact alleged in detail in the Global Pension Funds' Complaint.  (*See, e.g.,* Global Pension Funds' Complaint ¶¶ 3-8, 91-98.)  The Global Pension Funds are continuing their investigation of the facts to further develop the allegations in their Complaint.  If appointed as Lead Plaintiffs, the Global Pension Funds will incorporate such allegations into a consolidated amended complaint on behalf of the Class.

## ARGUMENT

### I.    THE GLOBAL PENSION FUNDS ARE THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFFS TO LEAD THIS LITIGATION

This Court has the "discretion to appoint more than one lead plaintiff and can aggregate the losses suffered by a group of investors."  *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (citing *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 46 (S.D.N.Y. 1998).  The PSLRA also specifies that groups of plaintiffs can serve together as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii)(I).  The propriety of appointing a group of investors is heightened when that group evidences "initiative" in connection with the litigation at hand, as the Global Pension Funds have done here.  *Id.*

---

[9] *See* "Citi Reports Fourth Quarter New Loss of $9.83 Billion, Loss Per Share of $1.99," a copy of which is attached as Exhibit 11 to the January 28, 2008 Entwistle Declaration.

A.    **The Global Pension Funds Possess The Largest Financial Interest In The Relief Sought By The Class**

To determine the "most adequate plaintiff," the Court must first determine which movant has the greatest financial interest in the litigation.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  Of the four factors that courts in this District examine to determine a lead plaintiff applicant's financial interest, the claimed loss is by far the most significant.[10]  *See Constance Sczesny Trust*, 223 F.R.D. at 323; s*ee also Vladimir v. Bioenvision*, *Inc.*, No. 07 Civ. 6416 (SHS) (AJP), 2007 U.S. Dist. LEXIS 93470, at *15 (S.D.N.Y. Dec. 21, 2007) ("most courts have found the fourth factor, the approximate loss suffered during the class period, to be the most important factor in determining who should lead plaintiff") (collecting cases).  *See Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *14 (S.D.N.Y. Jan. 24, 2006) ("[Movant] has not directed the Court to any case where a plaintiff who did not have the greatest actual loss was found to have the greatest financial interest based on the remaining [four factors].")

The Global Pension Funds have the largest loss in the two potential Class Periods at issue here:

---

[10] While courts in this Circuit routinely find that the movant with the greatest loss also has the largest financial interest, this Court has utilized a "four factor" approach which considers: (i) total shares purchased (or sold) during the class period; (ii) net shares purchased (or sold) during the class period; (iii) total net funds expended during the class period; and (iv) the approximate loss suffered during the class period.  *See Constance Sczesny Trust*, 223 F.R.D. at 323.

**Class Period from January 2, 2004 through November 21, 2007[11]**

|  | FIFO | LIFO |
|---|---|---|
| **Global Pension Funds** | **$132,020,643** | $50,228,955 |
| **ATD Group** | $76,859,112 | $76,859,112 |
| **STRS/SURS** | $53,073,872 | $10,958,515 |
| **David Garden** | $2,130,405 | $2,130,405 |

**Class Period From January 1, 2004 through November 5, 2007[12]**

|  | FIFO | LIFO |
|---|---|---|
| **Global Pension Funds** | **$125,453,878** | $47,109,894 |
| **ATD Group** | $76,859,112 | $76,859,112 |
| **STRS/SURS** | $50,843,928 | $10,512,721 |
| **David Garden** | $2,130,405 | $2,130,405 |

Under the FIFO methodology, the Global Pension Funds' losses are ***nearly 66% greater*** than the FIFO losses that the ATD Group claims and ***150% greater*** than STRS/SURS.  While the ATD Group claims a larger loss under LIFO, courts are split on whether and when the FIFO or the LIFO methodology should be considered in evaluating approximate loss.  *Compare, e.g., In re Veeco Instruments Inc., Sec. Litig.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) ("I agree that FIFO is the appropriate methodology to apply in matching purchases and sales for the purpose of

---

[11]  The Global Pension Funds expect that the other applicants will submit their putative financial interest for the proposed Class Period from January 2, 2004 through November 21, 2007 in their respective opposition submissions.  Based upon the information that the Global Pension Funds have received to date (which, unfortunately, does not include transaction information that the Global Pension Funds requested from Ohio STRS and Illinois SURS in a January 11, 2008 letter to which STRS/SURS never responded), the Global Pension Funds believe that they also have the largest financial interest by far in the Class Period alleged in their Complaint.

[12]  During the lead plaintiff appointment process, courts will generally utilize the longest, most inclusive alleged class period, *see, e.g., In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006), which in this case would be the class period ending November 21, 2007 as alleged in the Global Pension Funds' Complaint.  *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (considering losses in longest alleged class period in lead plaintiff appointment process).  To facilitate an "apples-to-apples" comparison of financial losses among movants, the Global Pension Funds filed the Supplemental Declaration of Andrew J. Entwistle, dated January 14, 2008 (the "Supplemental Declaration"), setting forth their losses for the class period from January 1, 2004 to November 5, 2007.

considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology on computing losses on securities for tax purposes.) *with In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (favoring a LIFO approach). Ultimately, however, the Court need not endorse a particular methodology as the ATD Group is inadequate and suffers from disabling unique defenses and the Global Pension Funds have larger FIFO and LIFO losses than all other applicants. (*See* the Preliminary Statement and Section II (A) *infra*.)

### B.    The Global Pension Funds' Claims Are Typical of the Class's Claims

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001); *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, the Global Pension Funds' claims arise out of the same conduct and are based upon the same legal theories as the claims of all other Class members who purchased Citigroup securities during the Class Period.[13] The Global Pension Funds' claims, therefore, satisfy the typicality requirement of Rule 23(a). *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) (movant's claims do not need to be identical to the other Class members' claims); *see also In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (typicality exists where movant's claims "arise from the same conduct from which the other class members' claims and injuries arise").

---

[13] Namely, all investors allege that Citigroup and related Defendants violated the Securities Exchange Act of 1934 by making materially false and misleading statements and/or omitting material facts during the Class Period concerning Citigroup's exposure to, among other things, the unduly risky areas of subprime mortgages and Collateralized Debt Obligations ("CDOs") of Asset-Backed Securities ("ABS") through investments made and/or guarantees provided in connection with the Company's numerous Variable Interest Entities ("VIEs").

**C.     The Global Pension Funds Have Demonstrated That They Are
Capable Of Adequately Representing the Interests of the Class**

In determining whether a proposed Lead Plaintiff will fairly and adequately protect the interests of the class, the Court examines whether the applicant:  (i) has selected class counsel that is qualified, experienced, and generally able to conduct the litigation; (ii) does not have any interests that are antagonistic to the Class; and (iii) possesses sufficient interest to pursue vigorous prosecution of the claims.  *See Constance Sczesny Trust*, 223 F.R.D. at 324 (citations omitted).  The Global Pension Funds amply satisfy each of the foregoing requirements.

First, the Global Pension Funds are experienced fiduciaries and, in the case of Colorado PERA, have experience in leading multibillion dollar securities litigation.  (*See* Smith Decl. at ¶¶ 22-24.)  The sophistication, resources, and experience as fiduciaries that the Global Pension Funds bring to this litigation are set forth in detail in the Global Pension Funds' opening brief.  (*See* Global Pension Funds' Br. at 9-12.)  The Global Pension Funds have selected competent counsel, who are experienced in litigating complex securities class actions and have recovered billions of dollars for investors.  (*See* Global Pension Funds' Br. at 9, 12-13.)[14]  Second, unlike the ATD Group, the Global Pension Funds do not have any interests that are antagonistic to the interests of the Class.  Instead, the Global Pension Funds' claims and their vigorous prosecution of this litigation to date demonstrate that the Global Pension Funds' interests are directly aligned with the interests of the Class.

Third, the Declarations of Colorado PERA's General Counsel, Gregory Smith ("Smith Decl."); TCRS' Assistant Treasurer for Investments and Benefits, Eddie Hennessee ("Hennessee

---

[14] In *In re CMS Energy Sec. Litig.* referenced on page 13 of the Global Pension Funds' opening brief, Entwistle & Cappucci LLP served as Co-Lead Counsel, rather than as sole Lead Counsel. *In re DaimlerChrysler Sec. Litig.*, which is also referenced on page 13 of the Global Pension Funds' opening brief, was Master File No. 00-993 (JJF) (D.Del.), rather than No. 3:01-388 (M.D. Tenn.).

Decl."); AP4's Chief Executive Officer, Mats Andersson and AP4's Administrative Director, Agneta Wilhelmson Kåremar (the "Andersson-Kåremar Decl."); AP7's Vice-Executive Director, Richard Gröttheim (the "Gröttheim Decl."); and PKA Directors, Annegrete Birck Jakobsen and Michael Nellemann Pedersen (the "Jakobsen-Pedersen Decl.") (collectively, the "Declarations"), set forth each of the Global Pension Fund's willingness and commitment to prosecute vigorously the Class's claims. (*See* Exs. 2, 3, 4, 5, and 6, respectively, to the January 28, 2008 Entwistle Declaration.) As set forth in the Declarations, the Global Pension Funds' authorized their counsel the file the Global Pension Funds' Complaint as well as their Preservation Motion and Stay Lift Motion. (*See* Smith Decl. ¶¶ 9-10, 12; Hennessee Decl. ¶¶ 8-9; Andersson-Kåremar Decl. ¶ 11; Gröttheim Decl. ¶ 11; and Jakobsen-Pedersen Decl. ¶ 10.) These submissions display the depth of the Global Pension Funds' ongoing investigation and the Global Pension Funds' initiative in pursuing the Class's claims, further supporting their adequacy to lead the Class here. *See Constance Sczesny Trust*, 223 F.R.D. at 324.

The retainer agreement ("Retainer Agreement") and Joint Prosecution Agreement into which the Global Pension Funds have entered also demonstrate the Global Pension Funds' commitment to litigating this Action efficiently in the Class's best interests.[15] (*See* Smith Decl. ¶¶ 13-16; Hennessee Decl. ¶ 12-15; Andersson-Kåremar Decl. ¶¶ 13-16; Gröttheim Decl. ¶¶ 13-16; and Jakobsen-Pedersen Decl. ¶¶ 12-15.) The Retainer Agreement provides, among other things, a ceiling on counsel's hourly rates as well as a ceiling on total fees that counsel may request from the Court if the Global Pension Funds obtain a recovery that the Global Pension Funds believe to be in the best interests of the Class and worthy of the Court's approval. (*See*

[15] The Global Pension Funds' Retainer Agreement and Joint Prosecution Agreement into which the Retainer Agreement is incorporated, are attorney-client privileged communications. The Global Pension Funds, however, are pleased to submit these agreements for the Court's *in camera* review upon request.

Smith Decl. ¶ 14; Hennessee Decl. ¶ 13; Andersson-Kåremar Decl. ¶ 14; Gröttheim Decl. ¶ 14; and Jakobsen-Pedersen Decl. ¶ 13.)  The Joint Prosecution Agreement requires the Global Pension Funds' consent to non-routine litigation expenses, such as retaining experts, and provides that the Global Pension Funds will review, comment upon, and authorize all filings made with this Court.  (*See* Smith Decl. ¶ 15; Hennessee Decl. ¶ 14; Andersson-Kåremar Decl. ¶ 15; Gröttheim Decl. ¶ 15; and Jakobsen-Pedersen Decl. ¶ 14.)  In addition, the Joint Prosecution Agreement provides for regular telephone conferences among the Global Pension Funds during which their principals will discuss and determine litigation strategies and make any and all decisions required to continue to represent the best interests of the Class.  (*See id*.)

Simply stated, the Global Pension Funds are adequate representatives that are prepared to prosecute this action in the best interests of the Class.  The Global Pension Funds also fully satisfy Congress' intent to have institutional investors serve as lead plaintiffs on behalf of classes of aggrieved investors.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (the encouragement of institutional investors to serve as Lead Plaintiff would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

## II.    ALL OTHER APPLICATIONS SHOULD BE DENIED

As discussed above in Section I, the Global Pension Funds have the largest financial interest in this litigation and satisfy the typicality and adequacy requirements of Rule 23.  For this reason, the Court need not examine the putative adequacy or typicality of any other applicant.  *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004)

> "Once ... the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory

> requirements. That the district court believes another plaintiff may
> be 'more typical' or 'more adequate' is of no consequence. So
> long as the plaintiff with the largest losses satisfies the typicality
> and adequacy requirements, he is entitled to lead plaintiff status,
> even if the district court is convinced that some other plaintiff
> would do a better job." (quotation omitted).

Nevertheless, set forth below are certain matters that would be relevant if the Court determines it

is necessary to further consider the other applications.

### A.    The ATD Group Is Inadequate and Atypical

Even if the ATD Group had the largest financial interest -- which it does not -- the ATD

Group fails to satisfy the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I)(cc); *see also Shi v. Sina Corporation*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist.

LEXIS 13176, at *7 (S.D.N.Y. July 1, 2005) ("typicality and adequacy of representation are the

only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA")

(quoting *Oxford Health Plans*, 182 F.R.D. at 49. First, the ATD Group is inadequate because it

possesses interests that are clearly antagonistic to the Class. Second, the ATD Group is atypical

of the Class because it would be subject to numerous unique defenses.

### 1.    The ATD Group Has Taken Public Positions That Are Hostile to the Class and Raise Serious Questions as to The ATD Group's True Motivation

Rule 23's adequacy inquiry "serves to uncover conflicts of interest between the named

plaintiffs and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625

(1997); *see also Constance Sczesny Trust*, 223 F.R.D. at 324-25 (inadequacy is demonstrated by

"specific support in evidence of the existence of an actual or *potential* conflict of interest")

(emphasis added). Thus, the court must examine whether the ATD Group possesses interests

that are antagonistic to other Class members. *See Strougo v. Brantley Capital Corp.*, 243 F.R.D.

100, 105 (S.D.N.Y. 2007); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  In this

instance, it is beyond question that the ATD Group is inadequate to represent the Class.

David K. Whitcomb, the Chairman Emeritus of the ATD Group, has publicly proclaimed

that the massive drop in the price of Citigroup stock was not a result of the Defendants' fraud.

Instead, Dr. Whitcomb believes that the marketplace overreacted.  In this regard, Dr. Whitcomb

declared in response to a November 5, 2007 Wall Street Journal MarketBeat Blog entry titled

"Erasing $120 Billion in Market Cap":

> ***Citi's loss of $50 billion in market cap is a ridiculous over-
> reaction.***  While there may be write-downs in excess of what they
> have taken and forecast to date, there is no possible way Citi could
> lose $50 billion.  That would be more than half of their total
> exposure.  ***The credit instruments in question are just not that
> bad.***
>
> By way of full disclosure, I should note that I am Chairman
> Emeritus of ATD, which was sold to Citi recently, ***so I hold a lot
> of Citi stock and am NOT a disinterested party.  However, as a
> retired professor of finance (Rutgers Univ), I'd say this whether I
> owned Citi stock or not.***

Comment by David K. Whitcomb, PhD - November 5, 2007 at 3:46 pm.  Ex. 7, (emphasis

added).[16]

Since the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336

(2005) plaintiffs have faced increased attacks questioning their ability to plead and prove loss

causation[17] (*i.e.*, that the drop in a company's stock price was caused by the fraud alleged and not

---

[16] The Global Pension Funds vehemently disagree with the ATD Group's position and reserve
the right to demonstrate that the all of the Class's losses were in fact caused by the Defendants'
fraud.

[17] For example, a January 28, 2008 search of LEXIS/NEXIS yielded 638 cases citing the
Supreme Court's decision in *Dura*.

some other non-actionable reason).[18]  Dr. Whitcomb's misguided decree that the drop in

Citigroup's stock price was an overreaction by the market is factually incorrect and -- more

importantly -- is wholly antagonistic to proof of loss causation for the Class.  Dr. Whitcomb's

public stance is prima facie evidence that the ATD Group is inadequate to lead this Class.  *See In

re Oca, Inc. Sec. & Deriv. Litig.*, No. 05-2165 (E.D. La. Nov. 18, 2005) (rejecting lead plaintiff

because it "faces issues concerning loss causation that the other lead plaintiff candidates do

not");[19] *Veeco*, 233 F.R.D. at 333-334 (rejecting lead plaintiff applicant due to loss causation

issues).

More pointedly, it is highly suspect that a person making such statements would

subsequently seek to represent the very shareholders harmed by the defendants' fraud.  But Dr.

Whitcomb and the ATD Group -- as they concede -- are not your garden variety shareholders.

"The ATD Group comprises *only* former shareholders of a closely-held corporation, Automated

Trading Desk, who received the Citigroup stock as part of their June 30, 2007 agreement to sell

ATD to Citigroup."  (ATD Group Br. at 5-6.) (emphasis in original).

The ATD Group has failed to disclose numerous facts concerning its involvement with

the Defendants, including the fact that ATD was sold to the Citigroup unit at the heart of the

fraud and that many former ATD employees apparently continue to work at Citigroup.

Significantly, ATD also failed to disclose that pursuant to the merger agreement, "***Citigroup***

***agreed*** to register the resale of the common stock owned by the [ATD Group] and ***to indemnify***

---

[18] *See also* 15 U.S.C. 78u-4(b)(4) ("In any private action arising under this chapter, the plaintiff
shall have the burden of proving that the act or omission of the defendant alleged to violate this
chapter caused the loss for which the plaintiff seeks to recover damages."); *Lentell v. Merrill
Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005) (dismissing claims against research analysts
for failure to establish loss causation).

[19] A copy of this decision is attached as Exhibit 12 to the January 28, 2007 Entwistle
Declaration.

**the [ATD Group] against certain liabilities related to the selling of the common stock,**

**including liabilities arising under the Securities Act**." Ex. 13, SEC Form S-3ASR (the "Form

S-3ASR"), at 3, filed by Citigroup on Oct. 3, 2007 (emphasis added). The ATD Group has also

conspicuously failed to submit the acquisition agreements, failing to address legitimate questions

as to why the ATD Group has not pursued direct claims against Citigroup for breaching the

representations and warranties customarily found in such agreements.[20] *See, e.g.,* Ex. 14, SEC

Form 8-K, at 59-61, filed by Citigroup on Jan. 31, 2005 (Section 5.8 of the Acquisition

Agreement between Citigroup and MetLife, Inc., which details Citigroup's representations and

warranties regarding the accuracy of its SEC Filings and Financial Statements ).[21]

The ATD Group does not have the largest financial interest and the inadequacies

addressed herein are more than enough to disqualify the ATD Group's lead plaintiff application.

Nevertheless, any further consideration of the ATD Group's application would have to include,

at a minimum, an opportunity to review the following documents relating to Citigroup's

acquisition of ATD:

- the merger agreement, dated as of June 30, 2007, referenced in the Form S-3ASR;

- the registration rights agreement referenced in the Form S-3ASR;

- the indemnity agreements between Citigroup and members of the ATD Group, referenced in the Form S-3ASR;

- any employment agreements between members of the ATD Group and Citigroup;

---

[20] As the ATD Group's counsel surely knows, a breach of warranty claim would be significantly easier to plead and prove given that fraudulent intent (*i.e.*, scienter) is not an element of such claims. *See LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending Inc.*, No. 04 Civ. 5452 (PKL), 2007 U.S. Dist. LEXIS 59303, at *23 (S.D.N.Y. Aug. 13, 2007). The ATD Group would also be able to avoid the heightened pleading requirements and the discovery stay imposed by the PSLRA by pursuing such claims.

[21] Theoretically, the ATD Group could at some point become a co-defendant alongside Citigroup.

- any consulting agreements between members of the ATD Group and Citigroup; and

- any confidentiality agreements between members of the ATD Group and Citigroup.

For the reasons stated above, however, there is no need for the Court to further consider the ATD Group's application to serve as a fiduciary for the Class here.

### 2. The ATD Group's Claims Are Atypical

Putting aside the ATD Group's patent inadequacy, the ATD Group also fails to satisfy the typicality requirements of Rule 23. Typicality exists where the movant's claims arise from the same conduct from which the other class members' claims and injuries arise. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Strougo*, 243 F.R.D. at 105. The ATD Group clearly suffers from numerous unique defenses because the ATD Group received Citigroup shares through a private sale that was personally negotiated by Dr. David Whitcomb (and perhaps other members of the ATD Group) on terms likely to be vastly different from those applicable to the open market purchases made by most Class members.[22]

In fact, courts routinely find claims of individuals who acquired stock through privately negotiated transactions to be atypical of those who purchased shares on the open market. *See, e.g., Coopersmith v. Lehman Bros, Inc.*, 344 F. Supp. 2d 783, 787-88 (D. Mass. 2004) (court

---

[22] While Dr. Whitcomb admits to negotiating with Citigroup, the record is unclear as to whether any member of the ATD Group had discussions with any of the Individual Defendants in the above captioned actions. *See* Ex. 15, Declaration of David Whitcomb ("As non-executive Chairman of ATD's Board and a member of the Board's 'Special Committee' on policy regarding negotiations, I was personally aware of all of the negotiations. In that capacity, I am aware of any representations that Citigroup provided to the ATD Group in connection with our decision to acquire Citigroup shares in exchange for our interests in ATD.") Dr. Whitcomb, however, cannot testify as to the personal knowledge of other members of the ATD Group concerning representations that Citigroup or any of the other defendants may have made to other ATD Group members. *See* Fed. R. Evid. 602; *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *31-34 (S.D. Cal. Oct. 9, 2002) (rejecting group that failed to provide declarations from each of its members because "[t]he exact financial knowledge held by [the silent] members will no doubt be fleshed out during discovery and issues unique to the Group raised at that time").

denied lead plaintiff movant's motion because "she had not purchased her shares on the open market, but had actually obtained her shares when she sold a company . . . in a private transaction"); *In re Peregrine Sys, Inc. Sec. Litig.*, No. 02cv70-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *31-34 (S.D. Cal. Oct. 9, 2002) (rejecting lead plaintiff group that acquired stock via merger); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (plaintiff was atypical because she did not acquire her shares through an open market purchase).

The rationale behind these decisions is that those involved in privately negotiated transactions face unique issues regarding their ability to demonstrate reliance -- be it due to the nature of face-to-face negotiations or the ability of such plaintiffs to invoke the fraud-on-the-market presumption that is so vital to the Class's claims. *See, e.g., In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) ("Courts have routinely found a disqualifying unique defense where the potential named plaintiff has had a direct or personal relationship with a board member or officer of the issuing company."); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989) ("Personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class.") (citations omitted); *Shiring v. Tier Tech., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) ("Thus, where, as here, plaintiff relies on the fraud-on-the-market doctrine to establish typicality, any reliance on non-market information means that 'he cannot be said to have relied on the integrity of the market, and is atypical of those who have so relied.'") (citation omitted); *In re Livent, Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 222 (S.D.N.Y. 2002) (noteholder was atypical because the notes were not traded on a public exchange but rather through privately negotiated transactions).

Dr. Whitcomb's declaration, in which he asserts that he has personal knowledge "of all of the negotiations" between Citigroup and the ATD Group and that the ATD Group only relied upon certain unspecified SEC filings and information from Citigroup's website, highlights the ATD Group's atypicality.  The declaration raises more questions than it answers, particularly in its suggestion that in this $690 million sale to Citigroup, ATD failed to undertake any typical due diligence and/or to negotiate any of the usual price and other buy-side transaction protections despite representation by outside corporate counsel.[23]  The ATD Group's efforts to explain the unique circumstances pursuant to which ATD Group members received their shares magnifies the ATD Group's atypicality and does nothing to address Dr. Whitcomb's statements that are detrimental to the Class.

In a case of this magnitude, the Class surely deserves better leadership.

**B.      The Remaining U.S. Public Funds**

STRS/SURS do not have the largest financial interest in this litigation.  For this reason, the Court need not further explore the issues raised by Mr. Clark's public statements (discussed above in the Preliminary Statement) or other matters of public record that would be relevant if STRS/SURS had the largest financial interest.

**C.      Garden Has A Comparatively Small Financial Interest In This Litigation And Has Demonstrated His Inadequacy By Selecting A Factually Indefensible Class Period**

Garden contends that he lost $2,130,405 based upon shares of Citigroup common stock that he purchased during the period from April 16, 2006 through November 2, 2007.  Garden selected the wrong class period upon which to base the Class's claims.  As set forth in the Global Pension Funds' Complaint, Citigroup admitted in an August 2007 submission to the London

---

[23] *See* Exhibit 15 to the January 28, 2008 Entwistle Declaration.

Stock Exchange concerning the Company's structured investment vehicles that Defendants knew *since 2004 that continued investment in RMBS and ABS CDOs presented too much risk*. (*See, e.g.*, Global Pension Funds' Complaint ¶¶ 21-23.) Moreover, Defendant Crittenden admitted on November 5, 2007 that Citigroup had issued Liquidity Puts in 2005. (*See, e.g.*, Global Pension Funds' Complaint ¶¶ 18-20.)[24] Garden's small financial interest in this litigation and his apparent disregard of facts bearing upon the proper period for the Class's claims warrants denial of his lead plaintiff application.

## CONCLUSION

The Global Pension Funds have the largest financial interest in the outcome of this litigation of all lead plaintiff applicants that satisfy the typicality and adequacy requirements of Rule 23. Pursuant to the PSLRA, the Global Pension Funds are the presumptively most adequate plaintiffs to represent the Class. The Global Pension Funds, therefore, respectfully request that the Court consolidate the Actions, appoint the Global Pension Funds as Lead Plaintiffs, and appoint their selected attorneys, Entwistle & Cappucci LLP, and Schiffrin Barroway Topaz & Kessler, LLP as Co-Lead Counsel to prosecute this litigation in the best interests of the Class.

---

[24] As alleged in the Global Pension Funds' Complaint, Citigroup provided billions of dollars of undisclosed Liquidity Puts and other credit enhancements during at least as early as 2004 as a "funding mechanism" in connection with its structuring of VIEs, as well as the Klio Funding entities arranged by Bear Stearns & Co., Inc. and its affiliates. (*See, e.g.,* ¶ 7.) These guarantees obligated Citigroup to buy back commercial paper issued by the VIEs -- an undisclosed risk that has resulted in Citigroup's absorption of $25 billion in returned VIE-issued paper to date. (*See, e.g.,* ¶¶ 18-20.)

Dated:  January 28, 2008

Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**

_____/s/_____
Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Stephen D. Oestreich, Esq. (SO-8933) (Of Counsel)
Jonathan H. Beemer, Esq. (JB-0458)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

- and -

**SCHIFFRIN BARROWAY TOPAZ**
   **& KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.

*Attorneys for Plaintiffs Public Employees'*
*Retirement Association of Colorado, Tennessee*
*Consolidated Retirement System, Sjunde AP-*
*Fonden, Fjärde AP-Fonden, and Pensionskassernes*
*Administration A/S and Proposed Lead Counsel for*
*the Class*